Case 3:21-cv-00152   Document 12   Filed on 05/17/22 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
May 17, 2022
Nathan Ochsner, Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

No. 3:21-CV-152

PROPEL FINANCIAL SERVICES, *APPELLANT*,

v.

JEFFREY PAUL WOODRUFF & SHARON KAY WOODRUFF, *APPELLEES*.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Propel Financial Services, as agent for Casey Lending, LLC, appeals a final order of the United States Bankruptcy Court for the Southern District of Texas, Galveston Division, denying post-petition fees, costs, and charges under 11 U.S.C. § 506(b). Dkt. 11. Upon reviewing the appeal, the law, and the record, the court vacates in part and remands for further proceedings consistent with this opinion.

## I

The Texas Tax Code permits a property owner to authorize another person to pay the taxes owed on his or her real property. Tex. Tax Code § 32.06(a-1). Upon payment of the property taxes, any pending tax lien

may be transferred by the taxing authority to the third party who paid the taxes. *Id.* § 32.06(a-2). The taxing authority issues a tax receipt to the third-party transferee and the lien is thereafter recorded in the property records of the county in which the encumbered property is located. *Id.* § 32.06(b).

When Jeffrey and Sharon Woodruff determined they were unable to pay their 2006 ad valorem property taxes, they engaged a private third-party lender, RETax Funding, L.P., to pay the taxes on their behalf. Supp. ROA at 23. RETax paid $7,282.11 in unpaid 2006 taxes and the Woodruffs authorized the taxing authorities to transfer the tax lien attached to their homestead to RETax. *Id.* The Woodruffs also entered into a written ten-year repayment agreement with RETax . *Id.* at 5. And the parties executed a Tax Lien Deed of Trust which augmented RETax's rights concerning the homestead and allowed it to foreclose in the event of default. *Id.* at 20–21.

The next year, the Woodruffs entered into a similar transaction with RETax concerning their 2007 ad valorem property taxes. The Woodruffs again entered into a written agreement to repay RETax over ten years. *Id.* at 39. The parties executed a second Tax Lien Deed of Trust. *Id.* at 44.

After a series of assignments, Propel Funding National 1, LLC, d/b/a Propel Financial Services, stepped into RETax's shoes with respect to both the 2007 and 2008 transactions with the Woodruffs. *See* Supp. ROA at 25,

29, 31, 60, 64, 66.[1]

In 2018, the Woodruffs filed a voluntary petition for relief under chapter 13 of the Bankruptcy Code. *Id.* at 1. The Woodruffs' schedule of secured claims listed Propel's 2007 and 2008 claims as $10,667.29 and $9,029.51, respectively. *Id.* at 41–42. Both claims were oversecured because the value of the Woodruffs' homestead, which was used as collateral for the claims, was greater than the amount owed. *Id.* The Woodruffs' chapter 13 plan was confirmed on March 8, 2019. *Id.* at 110–11.

The next day, Propel filed an application seeking post-petition fees and expenses under 11 U.S.C. § 506(b). ROA at 137. The bankruptcy court denied Propel's application, reasoning that Federal Rule of Bankruptcy Procedure 3002.1(c)(2) requires that any notices for reimbursement "be served within 180 days after the date on which the fees, expenses, or charges are incurred." *Id.* at 153. When Propel served its application, more than 700 days had passed since the last listed charges were incurred. *Id.*

Propel moved for reconsideration of the denial, arguing that Rule 3002.1 did not apply to its claims because that rule applies only to "security interests" and not "statutory liens." ROA at 154. And then Propel amended

---

[1] Both the 2007 and 2008 tax liens were ultimately assigned to Casey Lending LLC. ROA at 125–26, 131–32. Because the record on appeal shows that Propel is acting as the agent for Casey Lending, the court will continue to refer to Propel as the appellant in this opinion.

its motion for reconsideration, arguing that Rule 3002.1 was inapplicable because it was not receiving contractual installment payments. *Id.* at 163.

The bankruptcy court denied Propel's motion for reconsideration. It reasoned that because Propel "chose" to have the Woodruffs secure the notes with deeds of trust, they were "security interests" and, therefore, Rule 3002.1 applies. *Id.* at 174–75. The court further struck Propel's amended motion for reconsideration because it raised "new claims" and so was untimely. *Id.* at 172.

Propel appeals the bankruptcy court's order denying reimbursement and its orders denying reconsideration. Dkt. 11. The Woodruffs have not filed a brief in response.

## II

### A

Issue 1: Whether the bankruptcy court erred in applying Rule 3002.1 to Propel's application for reimbursement of fees and holding that the application was untimely.

Issue 2: Whether the bankruptcy court erred in denying Propel's application without notice of the grounds and a hearing.

Issue 3: Whether the bankruptcy court erred in striking Propel's amended motion for reconsideration on the grounds of untimeliness.

### B

District courts have appellate authority over timely filed appeals from

"final judgments, orders, and decrees" of the bankruptcy court. 28 U.S.C. § 158(a). Federal courts have held that an "order resolving a motion for postpetition interest, attorneys' fees, and costs is final for purposes of appellate jurisdiction." *See In re Twiford Enterprises, Inc.*, Bankr. No. 18-20120, 2020 WL 6075691, at *2 n.13 (10th Cir. BAP Oct. 15, 2020); *cf. In re T-H New Orleans Ltd. Partnership*, 116 F.3d 790 (5th Cir. 1997).

District courts review bankruptcy-court rulings and decisions under the same standards employed by federal courts of appeal: findings of fact are reviewed for clear error, while conclusions of law and mixed questions of law and fact are reviewed *de novo*. *See In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003); *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000); *In re D'Amico*, 509 B.R. 550, 555 (S.D. Tex. 2014). But matters within the discretion of a bankruptcy court, such as rulings on motions to reconsider, are reviewed only for abuse of discretion. *In re Gandy*, 299 F.3d 489, 494 (5th Cir. 2002); *In re Colley*, 814 F.2d 1008, 1010 (5th Cir. 1987) (citation omitted).

When reviewing a bankruptcy court's conclusions of law *de novo*, a district court may affirm the decision on any ground supported in the record and need not agree with every conclusion reached by the bankruptcy court. *Lanier v. Futch*, No. 3:11-CV-415-HTW-LRA, 2012 WL 12883771, at *4 (S.D.

Miss. Mar. 31, 2012) (citing *In re Caldo, Inc.*, 199 B.R. 1, 2 (S.D.N.Y. 1996)).

Propel's first appellate issue challenging the bankruptcy court's application of 3002.1 is a question of law to be reviewed *de novo*. Propel's second and third appellate issues challenging the denials of its motion to reconsider and amended motion to reconsider are reviewed for abuse of discretion.

## III

### A

Section 506(b) of the Bankruptcy Code provides that the holder of an oversecured claim shall be allowed "interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U.S.C. § 506(b). There is no dispute that Propel is the holder of two oversecured claims for ad valorem taxes on the Woodruffs' homestead by virtue of Texas Tax Code § 32.06. But Propel challenges the bankruptcy court's application of Rule 3002.1 to those claims.

Rule 3002.1 "applies in a chapter 13 case to claims (1) that are secured by a security interest in the debtor's principal residence, and (2) for which the plan provides that either the trustee or the debtor will make contractual installment payments." Fed. R. Bankr. P. 3002.1(a). When Rule 3002.1 applies, the holder of the claim must file and serve on the parties a notice

itemizing all fees, expenses, and charges. *Id.* 3002.1(c). "The notice shall be served within 180 days after the date on which the fees, expenses, or charges are incurred." *Id.*

The thrust of Propel's appeal focuses on the requirement that a claim must be secured by a "security interest" in the debtor's principal residence for Rule 3002.1 to apply. Dkt. 11 at 8–16. Propel argues that because it holds a statutory lien—not a security interest—in the Woodruffs' homestead, neither Rule 3002.1 nor its 180-day notice requirement applies. *Id.*

The Bankruptcy Code categorizes liens into three types: judicial liens, security interests, and statutory liens. *See* 11. U.S.C. § 101(36), (51), (53); *In re Green*, 793 F.3d 463, 467 (5th Cir. 2015). The Code defines "security interest" as a "lien created by agreement." *Id.* § 101(51). By contrast, a "statutory lien" is defined as a "lien arising solely by force of a statute on specified circumstances or conditions, . . . but does not include security interest or judicial lien." *Id.* § 101(53).

It is undisputed that Propel, as a transferee and subrogee of the taxing authorities' rights, holds statutory liens that arose automatically under the Texas Tax Code. Both Propel and the bankruptcy court agree that under Texas law, a transferee of a tax lien is "subrogated to and is entitled to exercise any right or remedy possessed by the transferring taxing unit." Tex.

Tax Code § 32.065(c); ROA at 175 ("It is true that Propel holds a tax claim, as it is the transferee of the tax lien and a subrogee of the taxing authorities' rights."). Texas law further grants transferees permission to charge interest, collect attorneys' fees for collection, and attorneys' fees if the homeowner files for bankruptcy. *Id.* §§ 32.06, 32.065; Tex. Fin. Code § 351.0021.

The bankruptcy court, however, reasoned that because the underlying taxes were paid by Propel, the tax liens could not have secured Propel's claims. ROA at 175. Instead, the court reasoned, Propel "chose to also require the debtors to sign a Note and Deed of Trust using their principal residence as security for the repayment of the Note," and therefore Propel now holds a "garden[-]variety promissory note executed by the debtor and payable to the movant." *Id.* n.6 (citing *In re Soto*, 410 B.R. 761 (Bankr. S.D. Tex. 2009)). In other words, the bankruptcy court understood Propel to hold two security interests in the homestead and not statutory liens.

To support its contention that payment of the underlying tax obligation extinguished the underlying tax lien, the bankruptcy court relied on *In re Soto*, 410 B.R. 761 (Bankr. S.D. Tex. 2009). The *Soto* court held that once a "tax claim" was paid, it was extinguished and the resultant "tax lien" on the debtor's property merely "secures a garden[-]variety promissory note executed by the debtor and payable to the movant." *Id.* at 764. The *Soto* court

relied principally on *In re Sheffield*, 390 B.R. 302 (Bankr. S.D. Tex. 2008). But just a year after *Soto*, the Fifth Circuit declined to follow *Sheffield*'s rationale in *In re Kizzee-Jordan*, 626 F.3d 239, 244 n.23 (5th Cir. 2010).

In *Kizzee-Jordan*, the Fifth Circuit analyzed the nature of an ad valorem tax-lien transferee's claim for purposes of 11 U.S.C. § 511. 626 F.3d at 240; *see* 11 U.S.C § 511 (providing protection from modification of the rate of interest on "tax claims" by a debtor's reorganization plan). The Fifth Circuit rejected the argument that once the third-party transferee paid the underlying tax, the transferee's tax claim was extinguished and replaced by an entirely new debt and secured only by a newly executed promissory note. 626 F.3d at 244–45. Instead, the Fifth Circuit held that while the entity holding the debt may change, the nature of the underlying tax debt does not change. *Id.* at 244 (citing Tex. Tax Code § 32.06(a-2)). "The fact that the lien is transferred does not mean that [the transferee] does not possess a tax claim." *Id.* at 244. A "holder of a lien has secured a right to payment on a claim" and the tax lien merely "evidences the claim for payment." *Id.* The court held that by allowing a transferee to pay the underlying tax and receive a tax receipt, the Texas statutory scheme "only changes the entity to which the [homeowners] are indebted for the taxes originally owed, not the nature of the underlying debt upon which the claim is based." *Id.* If the tax claim

were extinguished, the court reasoned, there would be no need to provide subrogation rights to the transferee. *Id.* at 245. Nor does this outcome change in light of the augmented nature of the subrogation rights transferees receive by statute compared to the rights the taxing authorities possess. *Id.* at 245–46. "The fact that the Texas legislature also chose to grant third-party lenders specific rights different from the taxing authorities does not change the fact that the lenders are subrogated, nor does it change the nature of the underlying debt as a tax debt." *Id.* at 246. Doing so, the court noted, "would effectively read the subrogation provision out of the statute." *Id.*

The Fifth Circuit's holding in *Kizzee-Jordan* is in line with Texas precedent preserving the rights of transferees of tax claims. *See Benchmark Bank v. Crowder*, 919 S.W.2d 657, 659–62 (Tex. 1996) (holding that refinancing a federal tax lien did not alter the nature of the original lien, nor does a deed of trust create a new lien against the property); *LaSalle Bank Nat. Ass'n v. White*, 246 S.W.3d 616, 618–19 (Tex. 2007) (collecting cases affirming the doctrine of equitable subrogation and lienholder's rights).

Accordingly, the bankruptcy court erred when it determined that the nature of Propel's statutory lien was extinguished when the underlying taxes were paid to the original taxing authorities. Next, the court analyzes the bankruptcy court's rationale that the nature of the tax claims changed when

the Woodruffs entered into repayment agreements and executed deeds of trust.

## B

The bankruptcy court held that Propel's tax claims are secured by the homestead using the notes (the repayment agreements) and deeds of trust. But as one bankruptcy court recently held, this argument presumes that transference of the tax lien created a new, separate lien against the homestead. *See Reed*, No. 17-52875, 2021 WL 4395821, at *5 (Bankr. W.D. Tex. Sept. 24, 2021).

Under Texas law, homesteads are generally protected from forced sale by creditors to satisfy debts, except for those categories of debts specifically enumerated in the Texas Constitution and the Texas Property Code. Tex. Const. art. XVI, § 50(a); Tex. Prop. Code § 41.001(b); *see Wells Fargo Bank, N.A. v. Murphy*, 458 S.W.3d 912, 917 (Tex. 2015). The list of debts permitted to encumber homesteads include: (1) claims for purchase money of the property; (2) taxes due on the property; (3) certain work and material to improve, renovate, or repair the property; (4) certain extensions of credit for home-equity loans; and (5) reverse mortgages. Any attempt to mortgage homestead property, except as approved by the Texas Constitution, is void. *Laster v. First Huntsville Props. Co.*, 826 S.W.2d 125, 129 (Tex. 1991)

(collecting cases).

Here, it is undisputed that the property at issue is the Woodruffs' homestead. Propel's statutory liens created under Texas Tax Code § 32.01 meet the Texas Constitution's exception for permissible liens on homestead property. It is also undisputed that such tax claims are valid against homesteads even if the claims are enforced by a third party due to a transfer of the original debt. *Crowder*, 919 S.W.2d at 659; *Fernandez v. FGMS Holdings, L.L.C.*, No. 1:17-cv-00018, 2017 WL 6888530, at *2 (S.D. Tex. July 25, 2017); *Reed*, 2021 WL 4395821, at *5. Propel's statutory liens based on tax debt, therefore, are enforceable against the Woodruffs' homestead under the Texas Constitution.

Regarding the instruments necessary to comply with a tax-lien transfer, Texas Tax Code § 32.065(b) provides that a contract entered into between a transferee and the homeowner under § 32.06 shall, among other things: (1) provide for foreclosure measures; (2) enumerate what constitutes default and proper notice of acceleration; and (3) must be recorded in each county in which the property is located. Tex. Tax Code § 32.065(b). Because the Tax Code requires transferees to memorialize the terms of the agreement with the debtor, transferees cannot be penalized for asking debtors to sign notes and deeds of trust. *Reed*, 2021 WL 4395821, at *5. If, by following the

requirements of the Tax Code, the agreement created a new and separate security interest, such a provision would arguably render portions of the Tax Code unconstitutional or require courts to read the subrogation provisions out of the Tax Code. *Id.* A more reasonable reading of the statutory provisions is that while Propel "had to comply with the Texas Tax Code and could provide new terms and conditions for foreclosure, no new security interest was created because the nature of the underlying tax debt does not change." *Id.* (citing *Kizzee-Jordan*, 626 F.3d at 244; *Crowder*, 919 S.W.2d at 659). Such an interpretation reinforces one of the Bankruptcy Code's fundamental tenets: that statutory liens and security interests have "mutually exclusive definitions; a lien must be one or the other." *Reed*, 2021 WL 4395821, at *4 (quoting *In re Holmes*, 603 B.R. 757, 770 (D.N.J. 2019)).

In sum, Propel does not hold a separate enforceable security interest in the Woodruffs' homestead, but instead holds a statutory lien by way of § 32.06. The nature of these statutory liens does not change once the underlying tax is paid. Nor does the nature of the statutory liens change after notes and deeds of trust are signed. Finally, the notes and deeds of trust do not create a new or separate lien. Accordingly, the court finds that Propel's

tax claims did not trigger the requirements of Rule 3002.1.[2] The bankruptcy court erred as a matter of law when it determined that Rule 3002.1, and its notice requirements, applied to Propel's statutory liens.

\* \* \*

The bankruptcy court's order denying Propel's application for fees and expenses is VACATED and this case is REMANDED to the bankruptcy court for further proceedings consistent with this opinion. In light of this ruling, the court need not reach Propel's second and third appellate issues.

Signed on Galveston Island this 17th day of May, 2022.

                                                 JEFFREY VINCENT BROWN
                                                 UNITED STATES DISTRICT JUDGE

---

[2] Because the court finds that Rule 3002.1 does not apply, the court need not address Propel's argument that Rule 3002.1 applies only when the approved plan pays the creditor "contractual installment payments." Fed. R. Bankr. P. 3002.1(a).